UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES W. COLEMAN,<br>    Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER CUNNINGHAM, CAPTAIN CARLOS NUNEZ, AND CORRECTIONAL OFFICER FERGUSON,<br>    Defendants. | :<br>:<br>:<br>:   Case No. 3:21-cv-01392 (VLB)<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## INITIAL REVIEW ORDER

Plaintiff Charles W. Coleman is incarcerated at Cheshire Correctional Institution ("Cheshire") within the Connecticut Department of Correction ("DOC"). He brings claims, pursuant to 42 U.S.C. § 1983, against Defendants Correctional Officer Cunningham, Correctional Officer Ferguson, and Captain Carlos Nunez for violating his Eighth and Fourteenth Amendment rights. Specifically, he alleges Officer Cunningham used excessive force against him, Officer Ferguson deprived him of his property, and Captain Nunez failed to investigate and act when Mr. Coleman complained of these rights violations. For the following reasons, the Court DISMISSES this case without prejudice to refiling an amended complaint that properly states claims upon which relief may be granted.

    I.    BACKGROUND

The complaint alleges the following facts. This case involves Mr. Coleman's injuries and stolen property arising from an incident with correctional officer staff on October 21, 2018. As a backdrop, two months prior to this incident Mr. Coleman was placed in the segregation unit and his property was inventoried. In relevant

part, the inventoried property included: "CD player, adapter, 26 CDs, watch and other items."[1]  Dkt. 1 (Compl.) ¶ 25.

On October 21, 2018, around 1:15 pm, Mr. Coleman attended church service with other inmates where Officer Cunningham conducted a pat down search at the door.  *See id.* ¶ 1.  Suddenly, a code was called at the church.  *See id.* ¶ 2.  Officers began running towards the church and Mr. Coleman backed up against the wall so they could pass.  *See id.* ¶¶ 2-3.  Officer Cunningham yelled at Mr. Coleman and pushed him against the door, causing injuries.  *See id.* ¶ 4.  Mr. Coleman was thereafter placed in the segregation unit, even though the code was called for another inmate.  *See id.* ¶ 4.

Because Mr. Coleman was placed in the segregation unit, Officer Ferguson removed his property from his cell, inventoried the property, and placed it in Cheshire's property storage room.  *See id.* ¶ 20.  When Officer Ferguson brought the property inventory receipt to Mr. Coleman for review, he noticed several of his items had not been marked, including: "CD player, adapter, earplugs, 26 CDs, watch, beard trimmers, digital and rabbit antennas, 'coarial cables,' calculator, 3 photo albums of family pictures, 2 packs of batter[ie]s and other little items."  *Id.*  Mr. Coleman refused to sign the form because it was deficient.  *See id.*  Later that day, Mr. Coleman woke up and discovered a pink slip copy of the inventory receipt he previously refused to sign, and <u>some</u>—but not all—of the missing items had been added.  *See id.*  (The complaint does not clarify which items were added.)

---

[1] The Complaint includes confusing and seemingly random usage of quotation marks, apostrophes and commas.  For the benefit of the reader, these are removed except when they are grammatically correct.

2

On October 26, 2018, the DOC released Mr. Coleman from the segregation unit and returned his property.  See id. ¶ 21.  Mr. Coleman realized his "CD player, adapter, 26 CDs, watch, and other items" were missing and notified the unit officer about these missing items.  Id.

The following day, he wrote a request to Property Officer Quiones about the missing "CD player, adapter, 26 CDs, watch, and other items."  Id. ¶ 22.  Property Officer Quiones ultimately responded with the following: "<u>You received everything that was given to us.  I don't know where your property is.  But it's not here, check with your old block.  The items in Red is part of our inventory at property.</u>"  Id. (emphasis in original).  Mr. Coleman alleges that the red items on the original, white-colored form are "totally different" from the purportedly-duplicate pink slip copy that he received.  Id.

On October 28, 2018, Mr. Coleman requested to visit medical about the injuries to his left leg, knee, left forearm, and right wrist, which he sustained from the church code incident on October 21.  See id. ¶ 9.  He received treatment about one week later and was given ibuprofen.  See id. ¶ 10.  His injuries lasted months.  See id.

In addition to his medical request, on November 5, 2018, Mr. Coleman also informally requested that Captain Nunez investigate—including video footage review—Officer Cunningham's use of excessive force.  See id. ¶¶ 5-7.  He sought disciplinary action, but Captain Nunez never responded.  See id.

On November 13, 2018, Mr. Coleman submitted a request to DOC Commissioner Scott Semple concerning Officer Cunningham's use of excessive

force and Officer Ferguson's theft of his personal property. *See id.* ¶ 13. This request was forwarded to Cheshire's Acting Warden Jesus Guadarrama. *See id.* ¶ 14. (The complaint does not indicate the result of this request.)

Because Captain Nunez never responded to Mr. Coleman's informal request, he submitted an Inmate Administrative Remedy Form on December 5, 2018 concerning Officer Cunningham's use of excessive force. *See id.* ¶ 11. This grievance was rejected on the following week. *See id.* He thereafter appealed the rejection, and his appeal was also rejected. *See id.* ¶ 12.

On December 6, 2018, Mr. Coleman filed another Inmate Administrative Remedy Form—this time against Captain Nunez for failing to investigate Officer Ferguson's theft of his property. *See id.* ¶ 23. Again, Captain Nunez never responded. *See id.* Instead, the Administrative Remedy Coordinator returned Mr. Coleman's grievance with a blank Lost/Damaged Property Investigation Form with a message indicating, "Property is not grievable. Fill out lost/damaged form and return." *Id.*

Mr. Coleman submitted the Lost/Damaged Property Investigation Form on December 10, 2018. *See id.* ¶ 24. On March 6, 2019, "ARC" Green responded: "As stated by the property officer, you received everything that was given to them. There is no evidence to show your claim has merit." *Id.* (emphasis in original). Over a year later in July 2020, Mr. Coleman submitted a Property Claim Form to the DOC Lost Property Board. *See id.* ¶ 27. Mr. Coleman was later informed that his claim could not be adjudicated because he failed to timely submit his property claim within one year of discovering the property loss. *See id.* ¶ 28.

4

On July 13, 2020, Mr. Coleman submitted a written request for his grievances and related statements from Lieutenant Martinez.  *See id.* ¶ 18.  He has not received a response.  *See id.*

On September 8, 2020, Mr. Coleman received medical treatment for "severe pain" in his left leg, left knee, and right wrist.  *See id.* ¶ 19.  This pain stems from the incident in which Officer Cunningham used force against Mr. Coleman on October 21, 2018.  Mr. Coleman alleges that his pain is worse when it rains.  *See id.*  The DOC nurse gave him Tylenol-Acetaminophen (325 mg) for the pain.  *See id.*

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

6

### III.    DISCUSSION

Mr. Coleman alleges three distinct claims arising from the same incident. First, that Defendant Cunningham violated the Eighth Amendment by using excessive force against him. Second, that Defendant Ferguson violated his Fourteenth Amendment due process rights by depriving him of his property. Third, that Defendant Nunez is liable for both violations because he failed to act on Mr. Coleman's request for an investigation. For the following reasons, all three claims are dismissed without prejudice to refiling an amended complaint that states plausible claims.

#### A.    Excessive Force Claim Against Officer Cunningham

Mr. Coleman alleges that Officer Cunningham used excessive force against him, in violation of the Eighth Amendment, causing him injuries to his left leg, knee, left forearm, and right wrist. The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson v. McMillan*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-

10 (internal quotation marks omitted)).  However, it is the force used, not the injury sustained, that "ultimately counts." *Id.*  A malicious use of force constitutes a *per se* Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9).  The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component.  *See Wilkins,* 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

As currently pleaded, Mr. Coleman has not alleged a plausible claim that Officer Cunningham used excessive force against him.  The Complaint states that a "code" was called at the church where Mr. Coleman was attending services and where Officer Cunningham was stationed.  *See* Compl. ¶ 2.  This necessitated

multiple officers running through the hallway—where Mr. Coleman was standing—towards the church.  *See id.* ¶¶ 2-3.  Although Mr. Coleman backed up against the wall, Officer Cunningham pushed him against the door.  *See id.* ¶ 4.  As a result of this force, Mr. Coleman sustained injuries to his left leg, knee, left forearm, and right wrist, for which he continues to experience pain.  *See id.* ¶¶ 9, 19.  With respect to the objective component, Officer Cunningham's use of force to clear the space for other officers to address a "code" issue does not violate "contemporary standards of decency."  *See Hudson*, 503 U.S. at 8.  As for the subjective component, the pleadings indicate Officer Cunningham applied force "in a good-faith effort to maintain or restore discipline."  *See id.* at 7.  Rather than establishing an excessive force claim, the complaint merely shows that Officer Cunningham used force during an emergency, and Mr. Coleman unfortunately sustained injuries that were not the result of his own actions.

Although the excessive force claim is not plausible as pleaded, this dismissal is without prejudice to Mr. Coleman amending his complaint and satisfying both the objective and subjective components of the excessive force standard.

        B.    <u>Deprivation of Property Claim Against Officer Ferguson</u>

On the same day (but not necessarily arising from the same nucleus of fact), Mr. Coleman alleges that Officer Ferguson unlawfully lost his property in violation of the Fourteenth Amendment's due process clause.  Claims for deprivation of property under 42 U.S.C. § 1983 are only viable when the individual does not have a state-provided post-deprivation remedy.  *See Edwards v. Erfe*, 588 F. App'x 79,

80 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). As the Second Circuit in *Edwards v. Erfe* ruled, Connecticut provides an adequate post-deprivation remedy under § 4-141, *et seq.*, of the Connecticut General Statutes, which permits an inmate to bring a lost property claim before the Claims Commissioner. *See id.* That is, when an inmate claims that the DOC lost or damaged property, he is required to internally exhaust administrative remedies under Administrative Directive 9.6(9) after which he may file a claim with the Claims Commissioner within 60 days.[2] *See id.* at 80-81. Mr. Coleman utilized the lost property remedy provided by Administrative Directive 9.6 and § 1-141 *et seq*, but even though the remedy process permitted him to file a claim with the Claims Commissioner, he did not complete the process. Because Administrative Directive 9.6 and § 4-141 *et seq.* offer an adequate remedy, he cannot bring a § 1983 claim before this Court. Therefore, his lost property claim brought under § 1983 must be dismissed.

### C. Failure to Act Claim Against Captain Nunez

Finally, Mr. Coleman alleges Captain Nunez unlawfully failed to act when he complained about Officers Cunningham's and Ferguson's conduct. He first requested Captain Nunez conduct an investigation and then grieved Captain Nunez for failing to act. *See* Compl. ¶¶ 5-7, 11-12, 23.

---

[2] Since the Second Circuit decided *Edwards*, the DOC revised Administrative Directive 9.6 on April 30, 2021. *See* A.D. 9.6 (Inmate Administrative Remedies) (effective 4/30/2021, superseding 8/15/203 version), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf . Because Mr. Coleman went through the lost property claim process in 2018 and 2019, he would have navigated the system that existed when *Edwards* was decided.

10

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  The Second Circuit, in *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020), clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of constitutional rights.  The Second Circuit explained: "[A]fter *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' …. The violation must be established against the supervisory official <u>directly</u>."  *Id.* at 618 (emphasis added) (quoting *Ashcroft*, 556 U.S. at 676).

After *Tangreti*, Plaintiff must allege facts showing that a defendant or defendants personally "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 983 at 618-19.  A prison official's failure to respond to a request or complaint is not sufficient to establish the direct personal involvement of an individual defendant in a constitutional violation.  *See Braxton v. Bruen*, No. 917CV1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) (citing *Jones v. Annucci*, No. 16-cv-3516, 2018 WL 910594, at *11–12, (S.D.N.Y. Feb. 14, 2018) (noting that Acting Commissioner's failure to respond to the plaintiff's letter complaining of unconstitutional conduct, "without more, does not plausibly

allege his personal involvement" and citing cases) (other citations omitted); *see also Smart v. Annucci*, No. 19-cv-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [Defendants] failed to act on Plaintiff's complaints . . . cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'").

Mr. Coleman's claim against Captain Nunez—who received a written request to investigate but never followed-up—simply is not plausible without more. In any event, because the underlying violations are not plausible, a claim against him would not survive. Accordingly, this claim is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Mr. Coleman's excessive force claim against Officer Cunningham and failure to act claim against Captain Nunez are DISMISSED <u>without prejudice</u> and his lost property claim against Officer Ferguson is DISMISSED <u>with prejudice.</u>

The Court will afford Mr. Coleman one opportunity to file an amended complaint, within 35 days of this Order's filing date, to assert his Eighth Amendment claims for relief in an amended complaint that complies with this Order. Mr. Coleman's amended complaint must include allegations describing how each defendant against whom he seeks damages under section 1983 participated in the asserted constitutional violation. Mr. Coleman is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint

by reference.  Failure to file an amended complaint within this period will result in the dismissal and closing of this case.

_____
Vanessa L. Bryant
United States District Judge

SO ORDERED at Hartford, Connecticut this 27th day of May, 2022.